UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| BENJAMIN TYLER MCABEE, ) | Case Number 25-50037 |
| ) | |
| Debtor. ) | |

**MOTION OF THE UNITED STATES TRUSTEE TO DISMISS CASE FOR ABUSE**

Matthew W. Cheney, Acting United States Trustee for Region 4 (the "**U.S. Trustee**"), by counsel, moves for the entry of an order dismissing the case of Benjamin Tyler McAbee (the "**Debtor**") pursuant to 11 U.S.C. § 707(b)(1), (b)(3)(A), and (b)(3)(B) unless he converts his case to chapter 13. In support of this motion, the United States Trustee respectfully states as follows:

JURISDICTION AND VENUE

1.  Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are 11 U.S.C. §§ 105(a), 707(b)(1), 707(b)(3)(A), and 707(b)(3)(B).

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

BACKGROUND

4.  The Debtor is an individual who filed a petition for relief under chapter 7 of the Bankruptcy Code on January 27, 2025. The petition indicates that the Debtor's debts are primarily consumer debts. The petition, schedules, statements, and other documents filed at Docket Number 1 are incorporated by reference.

5.  The chapter 7 trustee conducted the first meeting of creditors on February 19, 2025, and the deadline for the United States Trustee to move to dismiss the Debtor's case is April 21, 2025.

1

6. This motion is timely filed.

7. During his meeting of creditors, the Debtor testified he had a copy of his petition and he identified his signature.

8. During his meeting of creditors, the Debtor testified he carefully reviewed "these papers," had actual knowledge of the information in them, and the information was true and correct.

9. During his meeting of creditors, the Debtor testified he listed all of his assets and creditors and he signed "it" before "it" was filed with this Court.

10. After an opportunity for discovery, the evidence is expected to show that the Debtor understood the chapter 7 trustee's reference to "these papers" and "it" to mean the documents filed at Docket Number 1.

11. During his meeting of creditors, the Debtor testified his income remained approximately the same as reported on his Schedule I (Official Form 106I). He also testified he did not expect any changes to his income over the next 6 months.

12. During his meeting of creditors, the Debtor testified his expenses remained approximately the same as reported on his Schedule J (Official Form 106J).

13. According to the Debtor's Statement of Financial Affairs (Official Form 107), he earned $144,611.33 in 2024 and $148,227.00 in 2023.

14. The Debtor responded "No" to question number 5 on his Statement of Financial Affairs ("Did you receive any other income during this year or the two previous calendar years?").

15. The Debtor responded "No" to question number 15 on his Statement of Financial Affairs ("Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of . . . gambling?").

16. In response to question 17 ("Deposits of money") on Schedule A/B (Official Form 106A/B), the Debtor disclosed money deposited in the following accounts:

| | | |
|---|---|---|
| 17.1. | Savings | Dupont Community Credit Union |
| 17.2. | Checking | Dupont Communithy Credit Union |
| 17.3. | Checking | First Bank and Trust Company |
| 17.4. | Savings | Virginia Credit Union |

17. Question 17 of Schedule A/B requires disclosure of money deposited with "brokerage houses."

18. The Debtor answered "No" in response to question 18 ("Bonds, mutual funds, or publicly traded stocks") on Schedule A/B (Official Form 106A/B).

19. Question 18 of Schedule A/B requires disclosure of "investment accounts with brokerage firms[.]"

20. The Debtor answered "No" in response to question 35 ("Any financial assets you did not already list") on Schedule A/B (Official Form 106A/B).

21. The Debtor answered "No" in response to question 53 ("Do you have other property of any kind you did not already list?") on Schedule A/B (Official Form 106A/B).

22. On Schedule I, the Debtor disclosed he has been employed by "Merck" for just over 8 years and he receives gross income of $7,475.87 per month.

23. The Debtor's pay advices show that he is paid every two weeks. The Debtor's pay advices from December 6, 2024, through and including January 17, 2025, show he received gross pay averaging $3,450.41 a pay period, which averages to $7,475.89 a month.

24. Over the course of 2023 and 2024, however, the Debtor's average gross monthly income exceeded $12,000.00.

25. On Schedule I, the Debtor disclosed his non-filing spouse receives $881.50 comprised of family support payments regularly received and income from coaching payable at the end of the season.

26. On Schedule I, the Debtor disclosed combined monthly income as $6,490.41.

27. On Schedule J, the Debtor disclosed monthly expenses totaling $6,524.30 and monthly net income of <$33.89>.

28. The Debtor did not disclose gambling expenses on Schedule J.

29. On his Statement of Current Monthly Income (Official Form 122A-1), the Debtor disclosed wages of $10,369.58 on line 1 of Column A and $0 on lines 2-10 of Column A.

30. Line 10 of the Statement of Current Monthly Income requires, with specified exceptions, disclosure of "[i]ncome from all other sources not listed above."

31. The Debtor's bank statements indicate that between September 9, 2024, and January 31, 2025, he gambled more than $4,000.00.

32. The Debtor's bank statements indicate that between September 9, 2024, and January 31, 2025, he received winnings totaling $970.81.

33. The Debtor's bank statements reflect deposits from a Paypal account.

34. The Debtor's bank statements reflect a deposit from "Robinhood Securities."

35. Robinhood Securities is a brokerage firm.

36. After an opportunity for discovery, the evidence may show that the Debtor has accounts with Paypal and Robinhood Securities.

37. In response to question 28 ("Tax refunds owed to you") on Schedule A/B, the Debtor disclosed:

| | | |
|---|---|---|
| tax refund child tax credit | Federal | $10,000.00 |
| tax refund | Federal | $5,313.50 |
| tax refund | State | $417.50 |

38. According to his 2023 state and federal income tax returns, the Debtor asserted claims for refunds totaling $21,462.00.

39. On Schedule E/F (Official Form 106E/F), the Debtor disclosed the following information regarding total unsecured claims:

| | | | | Total Claim |
|---|---|---|---|---|
| Total claims from Part 1 | 6a. | Domestic support obligations | 6a. $ | 0.00 |
| | 6b. | Taxes and certain other debts you owe the government | 6b. $ | 19,540.21 |
| | 6c. | Claims for death or personal injury while you were intoxicated | 6c. $ | 0.00 |
| | 6d. | Other. Add all other priority unsecured claims. Write that amount here. | 6d. $ | 0.00 |
| | 6e. | Total Priority. Add lines 6a through 6d. | 6e. $ | 19,540.21 |
| | | | | Total Claim |
| Total claims from Part 2 | 6f. | Student loans | 6f. $ | 11,000.00 |
| | 6g. | Obligations arising out of a separation agreement or divorce that you did not report as priority claims | 6g. $ | 0.00 |
| | 6h. | Debts to pension or profit-sharing plans, and other similar debts | 6h. $ | 0.00 |
| | 6i. | Other. Add all other nonpriority unsecured claims. Write that amount here. | 6i. $ | 128,450.57 |
| | 6j. | Total Nonpriority. Add lines 6f through 6i. | 6j. $ | 139,450.57 |

40. By deed dated December 7, 2020, the Debtor and his spouse became the owners of their current residence. The deed reflects the consideration paid as $445,944.00. The Debtor's Schedule E/F indicates that he incurred at least $109,000.00 in unsecured debts in or after 2021.

41. The Debtor gambled up to and after forming an intention to file bankruptcy. The Debtor completed his credit counseling course on January 16, 2025. By way of example and not in limitation, the Debtor's bank statements reflect he gambled nearly $100.00 the day he completed his credit counseling course. The bank statements reflect that between January 17, 2025, and his petition date, the Debtor gambled a further $270.99. And on his petition date, bank statements reflect that the Debtor gambled a further $350.00.

5

42. The Debtor has continued gambling since filing bankruptcy.

43. After an opportunity for discovery, the evidence is expected to show that the Debtor did not file this case because of any calamity leading to job or income loss.

44. It appears the Debtor has stable sources of income.

45. It does not appear the Debtor attempted to tighten his financial belt either before or after filing this case.

46. After an opportunity for discovery, the evidence is expected to show that if the Debtor stopped gambling, he could make significant repayments to his creditors, whether inside or out of bankruptcy.

47. By way of example and not in limitation, if the Debtor adjusted his withholdings to account for tax overpayments, it appears the Debtor could increase his monthly take home pay by over $800.00.[1] As discussed above, the Debtor's bank statements reflect he gambled an average of just over $800.00 a month between September 9, 2024, and January 3, 2025. Thus, it appears the Debtor could repay his creditors at least $1,600.00 a month.

## BASIS FOR RELIEF

*Bad Faith Filing*

48. The Court may enter any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).

49. The Court may dismiss this case or, with the Debtors' consent, convert it "if it finds that the granting of relief would be an abuse of the provisions of [chapter 7 of the Bankruptcy Code]." 11 U.S.C. § 707(b)(1).

50. Section 707(b)(3) of the Bankruptcy Code states:

---

[1] The Debtor would still likely receive a tax refund of $10,000.00 from child tax credits.

6

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

51. As the United States Bankruptcy Court for the District of South Carolina stated:

> A 'bad faith filing' is defined as a 'bankruptcy petition that is inconsistent with the purposes of the Bankruptcy Code.' Bad faith may involve a dishonest debtor or nefarious acts, but such motivation or intent is not necessary. Bad faith exists if the filing of the bankruptcy was for a purpose not consistent with the Bankruptcy Code or policy even though the purpose may otherwise be lawful.

*In re Bozard*, 587 B.R. 656, 663 (Bankr. S.C. 2018). "An analysis of bad faith under Section 707(b)(3)(A) may look outside a debtor's financial situation. Factors unrelated to a debtor's financial situation include eve-of-bankruptcy purchases . . . ." *In re Hornung*, 425 B.R. 242, 249 (Bankr. M.D.N.C. 2010); *see also In re Smith*, 585 B.R. 168, 177 (Bankr. W.D. Okla. 2018) (holding that while gambling is not *per se* indicative of bad faith, gambling and losing an average of $6,868.15 per month in the six months preceding filing "while leaning upon family largesse and state unemployment benefits is the sort of debtor action that crosses over a line of appropriateness."). Material misrepresentations and omissions in bankruptcy filings may also be considered. *In re Fox*, 521 B.R. 520, 532 (Bankr. Md. 2014).

52. Cause exists to dismiss the Debtor's case unless he voluntarily converts to chapter 13. Facts expected to be proven at trial that demonstrate the Debtor filed his petition in bad faith include, by way of example and not in limitation:

- The Debtor incurred substantial debts in a relatively short period of time leading up to his petition date, gambled significantly on his way into bankruptcy, and continued to gamble after his petition date;

- The Debtor misrepresented his financial situation on his schedules and statements including, but not limited to, failing to disclose his gambling; and

- The Debtor did not attempt to use bankruptcy to attempt to repay his creditors.

*Totality of the Debtor's Financial Circumstances*

53. The totality of the circumstances of the Debtor's financial situation demonstrates that it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code for the Debtor to receive a chapter 7 discharge. By way of example and not limitation, it appears the Debtor: (i) has the ability to make payments to his creditors whether inside or outside of bankruptcy; (ii) has filed inaccurate schedules and statements; (iii) did not attempt to tighten his financial belt before (or after) seeking relief under chapter 7; (iv) has a stable source of income; and (v) did not file this case because of any sudden calamity. Viewed under the totality of the circumstances of the Debtor's financial situation, the Court should dismiss the Debtor's case unless he voluntarily converts his case to chapter 13.

54. The United States Trustee reserves the right to alter, amend, and/or supplement the allegations contained herein as more information becomes available.

WHEREFORE, the United States Trustee, by counsel, respectfully requests the entry of an order dismissing the Debtor's case pursuant to § 707(b)(1) of the Bankruptcy Code unless the Debtor voluntarily converts his case to chapter 13.

//

//

Date:  March 4, 2025  Respectfully submitted,

United States Trustee

By: /s/ W. Joel Charboneau
Trial Attorney for the United States Trustee

W. Joel Charboneau (VSB #68025)
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov

9

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the United States Trustee has filed a *Motion Of The United States Trustee To Dismiss Case For Abuse* (the "Motion"). Unless an order is entered prior to the hearing, a preliminary hearing on the Motion will be held on **April 9, 2024, at 10:00 a.m.** in the **United States Bankruptcy Court for the Western District of Virginia** via Zoom (Meeting ID 160 369 2643).

**If you do not want the Court to grant the relief requested in the motion, then, pursuant to Local Rule 9013-1, you must file a response in the nature of an answer to a complaint in an adversary proceeding.** Local Rule 9013-1(M), in part, provides:

> Unless a different time is prescribed by any statute, Bankruptcy Rule or pre-hearing or other order entered by the Court with respect to such motion, such response shall be filed with the Court and served upon the proponent of such motion, or if the motion has been filed by counsel, upon such counsel, at least seven (7) days prior to the date of the noticed hearing, or if that is not practicable due to shortness of notice or other cause shown, as soon in advance of the hearing as may be practicable under the circumstances presented. Failure to file such a response will be cause for the Court to treat the motion as uncontested, to continue the hearing upon the motion, or to take such other action as may be appropriate to further the ends of justice.

## CERTIFICATE OF SERVICE

I certify that on March 4, 2025, I caused the foregoing to be electronically filed with the United States Bankruptcy Court for the Western District of Virginia which should have caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case including Debtors' counsel. On this same date, I caused a copy to be mailed by first class mail to:

Benjamin Tyler McAbee
129 Rhodes Hill Drive
Dayton, VA 22821

/s/ W. Joel Charboneau

W. Joel Charboneau (VSB #68025)
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2699
joel.charboneau@usdoj.gov